UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER GONZALEZ MEXICANO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZAI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:21-cv-001130-EFB (SS)<br><br><br><u>ORDER</u> |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Titles II and XVI of the Social Security Act.  ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 17 & 19.  The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 21.  For the reasons provided below, plaintiff's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied.

**I.      Background**

On September 6, 2016, plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and supplemental security income (SSI) under Title XVI of the Act, alleging disability beginning August 18, 2014, later amended to November 1,

/////

2015.[1]  Administrative Record (AR) 64, 113-114, 147-148, 817.  Plaintiff alleged he was disabled due to left arm injury, massive weight loss, diabetes, high blood pressure, and spots on his legs. AR 309, 314.  Plaintiff's application was denied initially, upon reconsideration, and in a decision by an administrative law judge (ALJ) on October 1, 2018.  AR 11-15, 31-45, 149, 161.  Plaintiff appealed in federal court, resulting in a remand of plaintiff's claim for further proceedings.  AR 817, 923-924 (March 19, 2020 Stipulation and Order to Voluntary Remand in *Gonzalez Mexicano v. Saul*, Case No. 2:19-cv-01452 DB).  On remand, the ALJ consolidated plaintiff's 2016 application with his subsequent Title II claim filed in November 2019.  AR 817, 930.  After a telephonic hearing before an ALJ on March 31, 2021, at which plaintiff was represented by

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

counsel, the ALJ published an unfavorable decision on April 14, 2021. AR 817-834. Plaintiff appeals the 2021 decision the instant case.

At the first hearing on his application in July 2018, plaintiff testified that he previously worked for a fruit and vegetable farm, Victoria Island Farms. AR 56, 58. His job consisted of hand-spraying the land and grass with chemicals for ten to twelve hours a day while driving a tractor. AR 56. The work required a mix of sitting and standing, with plaintiff continuously holding a sprayer tank, which weighed up to five pounds, and refilling the hand-held tank. AR 59-60, 63. Plaintiff testified that he stopped working in October 2015 due to pain and swelling in his left hand. AR 63-64. He testified that the hand and wrist pain had since gotten worse and gone up his arm. AR 65. He further testified to pain in his back and his left leg. AR 67-68. Plaintiff testified that could sit for two hours and walk for 45 minutes, and had trouble lifting and pulling anything with this left hand. AR 67-69.

At the second hearing in March 2021, plaintiff recounted the circumstances of his employment as a farm worker. AR 848-851. He testified that he continued to have pain in his left shoulder and arm, tremors in his hand, and neck pain. AR 852-854. Plaintiff testified that he could only do reaching activities for a short time, sit for about two hours, and carry ten pounds in his right hand only. AR 855-856.

Vocational expert (VE) Cheryl Chandler testified that a hypothetical individual of plaintiff's age, education, and work experience, with the ALJ's assessed residual functional capacity (RFC), would be capable of performing plaintiff's past work as a farm worker. AR 860-861. The VE further testified that either one of two additional limitations would preclude all past work: a limitation to using the non-dominant upper left extremity for a total of two hours during the day, and/or a limitation to lifting/carrying 15 pounds occasionally. AR 861-862, 866.

The ALJ determined that plaintiff had not been under a disability, finding as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since November 1, 2015, the alleged onset date.

/////

3. The claimant has the following severe impairments: arthritis of the left elbow; left triceps tendonitis; and, beginning in August 2020, lateral and medial epicondylitis of the left elbow and degenerative joint disease of the left shoulder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, except he is able to handle and finger frequently with his left, non-dominant upper extremity. He is able to push and/or pull frequently with his left upper extremity. He is able to reach above shoulder level occasionally with his left upper extremity.

6. The claimant is capable of performing past relevant work as a Farm Worker, Field Crop I. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2015, through the date of this decision.

AR 820-834.

## II.   Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Claims

Plaintiff claims the ALJ committed harmful error by failing to properly evaluate the opinions of three physicians, such that the RFC was not supported by substantial evidence.

### IV. Analysis

Plaintiff asserts that the ALJ committed harmful error by "summarily reject[ing]" the opinions of treating physicians Dr. Ian Pulliam and Dr. Rosalind Hsia, and also erred by failing to incorporate the opined limitations of examining physician Dr. Nayyar Masood into the RFC.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Filed in 2019, plaintiff's application is subject to the new rules for the evaluation of medical evidence.

/////

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

Here, the ALJ considered consolidated claims based on applications filed in 2016 and 2019, respectively. AR 817.  As set forth below, the ALJ's evaluation of the treating doctors' opinions was inadequate under both the prior and current regulatory standards.

   A. Dr. Pulliam and Dr. Hsia

Plaintiff saw Dr. Pulliam, an orthopedist, in April 2015, six months before the alleged onset date, when Dr. Pulliam noted that plaintiff was on light duty and that his left arm pain was worsening. AR 608.  On examination, plaintiff's head, neck, wrist, and left shoulder were normal, with no swelling or redness in the left elbow. AR 609.  Dr. Pulliam noted "very persistent arm pain of unclear etiology," referred plaintiff to a hand surgeon for a second opinion, and placed him on modified duty, with limited forceful or repetitive gripping with the left hand. AR 610-611.  Plaintiff was subsequently diagnosed with medial epicondylitis, requiring cortisone injections. AR 614.  Dr. Pulliam saw plaintiff again in December 2015 and January 2016, when he continued to assess work restrictions on gripping. AR 446, 622.  The ALJ summarized Dr.

Pulliam's opinions as follows:

> Ian Pulliam, DO, an examining physician as part of a worker's compensation claim, opined a series of temporary work limitations as part of the claimant's work related injury and potential worker's compensation claim. Ultimately, the claimant was limited from September 2014 through December 2015 to modified duty with a limit on forceful or repetitive gripping. [Record citations omitted.] Subsequently, Dr. Pulliam opined in January 2016 that the claimant had reached maximum medical improvement, and *that a permanent restriction limited the claimant to lifting and carrying 15 pounds with the left hand, with no repetitive gripping with the left hand*.[2] In March 2016, Dr. Pulliam opined that the claimant could return to his usual occupation.[3] On June 21, 2016, Dr. Pulliam indicated that he extended the claimant's disability for an additional two months.[4]

AR 832 (emphasis added).

Dr. Pulliam continued to treat plaintiff, and the ALJ cited his treatment notes as evidence that plaintiff's left shoulder, arm, and wrist had improved function by mid-2018. AR 829. These later findings are not at issue, however; plaintiff argues that the ALJ improperly weighed Dr. Pulliam's 2015 and 2016 opinions that plaintiff was limited to lifting and carrying 15 pounds with the left hand, with no repetitive gripping with the left hand. (ECF No. 17 at 14.)

Turning to the other worker's comp physician, Dr. Hsia evaluated plaintiff on June 2, 2016 for a Qualified Medical Evaluation. AR 404-414. She was asked to evaluate plaintiff for cumulative trauma to both the left and right upper extremities. AR 405. The ALJ summarized Dr. Hsia's evaluation as follows:

> [Dr. Hsia] opined in July 2016 as part of a worker's compensation evaluation that the claimant was *limited to two hours of work at a time with repetitive motion of the hands and arms. She opined that after this period, the claimant required 30 minute periods of rest or substitution of very light* duty for the repetitive work in terms of lifting, pushing, pulling, or carrying weights of 20 pounds and moderate to forceful grasping with his hands.[5] Dr. Hsia noted that she did not have access to the claimant's entire record, and that he

---

[2] Citing AR 446.

[3] Citing AR 463.

[4] Citing AR 1248.

[5] Citing AR 413.

7

> had not had an EMG of the median, ulnar, or sural nerves for review.[6] On December 5, 2016, Dr. Hsia indicated that "In terms of work, Mr. Gonzalez should be allowed to return to work with no restrictions while taking regular doses of NSAID other than Ibuprofen and using a home exercise program using stretches and eccentric heavy load exercise."[7] The doctor also noted, "He is T&PD with no need for restrictions."

AR 832 (emphasis added). Plaintiff asserts that the ALJ erroneously failed to incorporate Dr. Hsia's opined limitations of no more two hours' work with repetitive motion of the hands and arms, along with 30-minute rest periods or "very light duty" with respect to lifting, pushing, pulling, carrying, and grasping, into the RFC. (ECF No. 17 at 15.)

Weighing the opinions of these two treating physicians, the ALJ wrote:

> In terms of the opinions of Drs. Pulliam and Hsia, the undersigned is mindful that the claimant has participated in the worker's compensation process, and that some of the medical evidence in the file was produced for that purpose. Some of these medical evaluations are relevant in that they contain assessments that are useful for determining the claimant's functional ability, and accordingly, significant weight is given to reviews of x-rays and physical examinations. However, their administrative conclusions are different from that of the Social Security Administration's, as the two programs have different criteria for evaluation and policy goals. The [SSA] makes determinations of disability according to Social Security law. Therefore, a determination of disability, or extent of limitations, by another agency, is not binding on this procedure. *Therefore, the opinions of Dr. Pulliam and Hsia are given medium weight, to the extent that they are consistent with the assessed residual functional capacity.* In summary, the undersigned bases the medium exertional level with manipulative restrictions on the available medical records in combination with certain statements of the claimant regarding his activities of daily living and physical capabilities. . . . The [RFC] has taken all of the medical evidence of record into account, and considered the claimant's allegations and reports. Further restrictions are unwarranted in light of the available evidence.

AR 833 (emphasis added).

Under the regulatory standard for pre-2017 claims, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, to reject the opinions of these treating doctors. *Trevizo*, 871 F.3d at 675. In *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir.

---

[6] Citing AR 413.

[7] Citing AR 1240.

8

2022), the Ninth Circuit clarified that, under the revised regulations for evaluating medical opinions, ALJs need not provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, as such opinions are no longer entitled to "special weight." However:

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).

*Id.; see P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'")

Under either standard, the ALJ's evaluation of Dr. Pulliam's and Dr. Hsia's opined limitations was insufficient. The ALJ did not specify what evidence undermined these opinions nor considered the factors of supportability and consistency, but merely observed that determinations of disability in the worker's compensation process were "not binding" for Social Security purposes. *See Shockency v. Berryhill*, No. 2:17-cv-2427 EFB, 2019 WL 1359496, at *5 (E.D. Cal. Mar. 26, 2019) ("[A]n ALJ may not disregard a medical opinion simply because it was proffered for a purpose other than assessing eligibility for disability benefits."), citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."). In the absence of any discussion of these factors, the court cannot supply speculative reasons as to why the ALJ found these physicians' opinions unsupported by and/or inconsistent with other record evidence. Defendant argues that the ALJ cited plaintiff's reported daily activities, including fishing, as inconsistent with the treating doctors' opinions (ECF No. 19 at 11); however, the ALJ did not link plaintiff's self-reports of fishing or performing other activities with the opined limitations of these doctors. Rather, the ALJ appears to have discounted Dr. Pulliam's and Dr. Hsia's opinions simply because

they were "not binding"; she then made several general statements about how she arrived at the RFC. This was error.

The next question is whether the ALJ's error was harmless. The VE testified that either a limitation to lifting/carrying 15 pounds occasionally, or a limitation to using the non-dominant upper left extremity for a total of two hours of day, would preclude all past work, and the ALJ did not make alternate findings about other possible jobs. As noted above, Dr. Hsia opined certain limitations in July 2016, but in December 2016 opined that plaintiff could return to work with no restrictions. Because a few months of the opined restrictions would not qualify plaintiff as disabled, the ALJ's error with respect to Dr. Hsia appears harmless.

The error as to the opinion of Dr. Pulliam is a different matter. In March 2016, Dr. Pulliam also opined that plaintiff could return to work, but with "prophylactic work restrictions [limiting him] to lifting and carrying of 15 pounds with the left hand. No repetitive gripping with the left hand." AR 463. The assessed RFC does not include any limitation on how much weight plaintiff could lift with the left hand, nor any limitation on gripping with the left hand, either of which could have precluded the performance of past work. Because ALJ's error with respect to Dr. Pulliam's opinion was harmful, plaintiff is entitled to remand proceedings where all the medical opinions can be properly evaluated.[8]

## V. Conclusion

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[8] The undersigned does not reach plaintiff's argument with respect to Dr. Masood's opinion.

10

*Garrison,* 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: February 6, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE